AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Western District of Arkansas

| | |
|---|---|
| In the Matter of the Search of<br><br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>INFORMATION MAINTAINED BY GOOGLE WHICH IS<br>RELATED TO AN INVESTIGATION INTO THEFT AND<br>DESTRUCTION OF USFS PROPERTY | )<br>)<br>)<br>)  Case No. 6:21-cm-2<br>)<br>)<br>) |

**FILED**
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
Mar 29, 2021
OFFICE OF THE CLERK

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
Certain records and information stored at a premises controlled by Google which is related to an investigation into the theft and destruction of property owned by the USFS on or about March 19, 2021, through March 21, 2021.

located in the _____Western_____ District of _____Arkansas_____ , there is now concealed *(identify the person or describe the property to be seized)*:

Described in Attachment B hereto.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 641 & | - Theft of Government Property (Felony Level) |
| 18 U.S.C. 1361 | - Depredation of Government Property (Felony Level) |

The application is based on these facts:

See attached Affidavit in Support of An Application for Search Warrant

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Mia Prince (telephonically)  *BAB*

*Applicant's signature*

Mia Prince, Special Agent, USFS

*Printed name and title*

Sworn to before me and signed in my presence.

Date: March 29, 2021

*Judge's signature*

City and state:  Hot Springs, AR

United States Magistrate Judge Barry A. Bryant

*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| IN THE MATTER OF THEFT AND DAMAGE TO A GOVERNMENT VEHICLE/EQUIPMENT/OTHER PROPERTY, ON OUACHITA NATIONAL FOREST PROPERTY AND SEARCH OF INFORMATION THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE | **FILED UNDER SEAL**<br><br><br>Case No. 6:21-cm-2 |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, United States Forest Service (USFS) Special Agent (SA) Mia T. Prince, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a warrant to search information that is stored at premises controlled by Google, an electronic communication service and remote computing service provider headquartered in Mountain View, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a warrant under 18 U.S.C. § 2703(c)(1)(A) to require Google to disclose to the government the information further described in Attachment B.I.  The government will then review that information and seize the information that is further described in Attachment B.II.

2.      In May of 2002, I earned a Bachelor of Science Degree in Criminal Justice from Northern Arizona University.  I became a sworn federal law enforcement officer with the United States Forest Service (USFS) in July of 2002 and worked as a patrol officer until December 2010. In December of 2010, I earned a Master of Science Degree in Emergency Management from Arkansas Tech University and promoted to Special Agent in January of 2011.  I am currently the

Special Agent assigned to the Ouachita National Forest in ARKANSAS. My current duties include conducting criminal, civil, and administrative investigations concerning the Ouachita National Forests within the Eastern and Western Districts of Arkansas. During my career as a USFS Patrol Officer and Special Agent, I have participated in and conducted arrests for all types of felony and misdemeanor matters and conducted seizures of property and records associated with many types of illegal activity affecting federal and state properties. My current position with the USFS requires I detect criminal activity, conduct surveillance, execute search warrants, interview suspects, arrest suspects, process and collect evidence, and link any evidence to suspect(s). I have completed the National Resource Police Training (NRPT) and Criminal Investigator Training Program (CITP) from the Federal Law Enforcement Training Center (FLETC) in Glynco, GA, where I was trained to investigate numerous types of crimes including wildland fire and archeological resource crimes, distribution and cultivation of controlled substances, and theft and destruction of government property. During my tenure with the USFS, I have investigated numerous property crimes to include federal and state offenses.

3.       This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.       Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 641 - Theft of Government Property (Felony) and Title 18, United States Code, Section 1361 – Depredation of Government Property (Felony). There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## JURISDICTION

1.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  Specifically, the Court is a District Court of the United States that has jurisdiction over the offense(s) being investigated as defined by 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND RELATING TO GOOGLE AND RELEVANT TECHNOLOGY

2.     Based on my training and experience, I know that cellular devices, such as mobile telephone(s), are wireless devices that enable their users to send or receive wire and/or electronic communications using the networks provided by cellular service providers.  Using cellular networks, users of many cellular devices can send and receive communications over the Internet.

3.     I also know that many devices, including but not limited to cellular devices, have the ability to connect to wireless Internet ("wi-fi") access points if the user enables wi-fi connectivity.  These devices can, in such cases, enable their users to send or receive wire and/or electronic communications via the wi-fi network.  A tablet such as an iPad is an example of a device that may not have cellular service but that could connect to the Internet via wi-fi.  Wi-fi access points, such as those created through the use of a router and offered in places like homes, hotels, airports, and coffee shops, are identified by a service set identifier ("SSID") that functions as the name of the wi-fi network.  In general, devices with wi-fi capability routinely scan their environment to determine what wi-fi access points are within range and will display the names of networks within range under the device's wi-fi settings.

4.     Based on my training and experience, I also know that many devices, including many cellular and mobile devices, feature Bluetooth functionality.  Bluetooth allows for short-range wireless connections between devices, such as between a device such as a cellular phone or tablet and Bluetooth-enabled headphones.  Bluetooth uses radio waves to allow the devices to

exchange information. When Bluetooth is enabled, a device routinely scans its environment to identify Bluetooth devices, which emit beacons that can be detected by devices within the Bluetooth device's transmission range, to which it might connect.

5.      Based on my training and experience, I also know that many cellular devices, such as mobile telephones, include global positioning system ("GPS") technology. Using this technology, the device can determine its precise geographical coordinates. If permitted by the user, this information is often used by apps installed on a device as part of the apps' operation.

6.      Based on my training and experience, I know Google is a company that, among other things, offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Nearly every device using the Android operating system has an associated Google account, and users are prompted to add a Google account when they first turn on a new Android device.

7.      In addition, based on my training and experience, I know that Google offers numerous apps and online-based services, including messaging and calling (*e.g.,* Gmail, Hangouts, Duo, Voice), navigation (Maps), search engine (Google Search), and file creation, storage, and sharing (*e.g.,* Drive, Keep, Photos, and YouTube). Many of these services are accessible only to users who have signed in to their Google accounts. An individual can obtain a Google account by registering with Google, and the account identifier typically is in the form of a Gmail address (*e.g.,* example@gmail.com). Other services, such as Maps and YouTube, can be used with limited functionality without the user being signed in to a Google account.

8.      Based on my training and experience, I also know Google offers an Internet browser known as Chrome that can be used on both computers and mobile devices. A user has the ability to sign-in to a Google account while using Chrome, which allows the user's bookmarks,

browsing history, and other settings to be uploaded to Google and then synced across the various devices on which the subscriber may use the Chrome browsing software, although Chrome can also be used without signing into a Google account. Chrome is not limited to mobile devices running the Android operating system and can also be installed and used on Apple devices and Windows computers, among others.

9.     Based on my training and experience, I know that, in the context of mobile devices, Google's cloud-based services can be accessed either via the device's Internet browser or via apps offered by Google that have been downloaded onto the device. Google apps exist for, and can be downloaded to, devices that do not run the Android operating system, such as Apple devices.

10.     According to my training and experience, as well as open-source materials published by Google, I know that Google offers accountholders a service called "Location History," which authorizes Google, when certain prerequisites are satisfied, to collect and retain a record of the locations where Google calculated a device to be based on information transmitted to Google by the device. That Location History is stored on Google servers, and it is associated with the Google account that is associated with the device. Each accountholder may view their Location History and may delete all or part of it at any time.

11.     Based on my training and experience, I know that the location information collected by Google and stored within an account's Location History is derived from sources including GPS data and information about the wi-fi access points and Bluetooth beacons within range of the device. Google uses this information to calculate the device's estimated latitude and longitude, which varies in its accuracy depending on the source of the data. Google records the margin of error for its calculation as to the location of a device as a meter radius, referred to by Google as a "maps display radius," for each latitude and longitude point.

12.     Based on open-source materials published by Google and my training and experience, I know that Location History is not turned on by default. A Google accountholder must opt-in to Location History and must enable location reporting with respect to each specific device and application on which they use their Google account in order for that usage to be recorded in Location History. A Google accountholder can also prevent additional Location History records from being created at any time by turning off the Location History setting for their Google account or by disabling location reporting for a particular device or Google application. When Location History is enabled, however, Google collects and retains location data for each device with Location Services enabled, associates it with the relevant Google account, and then uses this information for various purposes, including to tailor search results based on the user's location, to determine the user's location when Google Maps is used, and to provide location-based advertising. As noted above, the Google accountholder also has the ability to view and, if desired, delete some or all Location History entries at any time by logging into their Google account or by enabling auto-deletion of their Location History records older than a set number of months.

13.     Location data, such as the location data in the possession of Google in the form of its users' Location Histories, can assist in a criminal investigation in various ways. As relevant here, I know based on my training and experience that Google has the ability to determine, based on location data collected and retained via the use of Google products as described above, devices that were likely in a particular geographic area during a particular time frame and to determine which Google account(s) those devices are associated with. Among other things, this information can indicate that a Google accountholder was near a given location at a time relevant to the criminal investigation by showing that his/her device reported being there.

14.     Based on my training and experience, I know that when individuals register with Google for an account, Google asks subscribers to provide certain personal identifying information. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, this information often provide clues to their identity, location, or illicit activities.

15.     Based on my training and experience, I also know that Google typically retains and can provide certain transactional information about the creation and use of each account on its system. This information can include the date on which the account was created, the length of service, records of login (*i.e.,* session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, Google often has records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

## PROBABLE CAUSE

16.     On March 19, 2021, at approximately 1915 hours, United States Forest Service (USFS) Engine Captain, Derek BOLLEN, parked USFS vehicle #3145, a white 2013 Ford F150

4X4 regular cab pickup truck assigned license plate #A367525, at the USFS Jessieville work center compound located at 8402 N. Highway 7 in Jessieville, AR  (34 42' 16.34" N -93 03' 45.77" W) which is within Garland County and part of the Western District of Arkansas.  BOLLEN returned to the work center to end his shift after working a prescribed burn conducted by the USFS on the Ouachita National Forest.

17.     On March 20, 2021, at approximately 0800 hours, USFS Law Enforcement Officer (LEO) Greg BURDEN received a call from USFS Fire Management Officer (FMO), Wyatt PALIN, stating that an USFS owned white 2013 4X4 Ford F150 regular cab pickup truck #3145 (assigned license plate #A367525) with a red emergency light bar was missing from the Jessieville work center.  FMO PALIN also advised the manual drive through gate to the compound was open and it appeared to be entered by force.  LEO BURDEN responded to the work center and observed the drive through gate was open and a front license plate #A367525 to a government vehicle was on the ground in front of the gate. The pole that secures the gate into the ground was bent and the gate had been obviously forced open.  The gate was still locked, but someone had attempted to drill out the keyhole of the lock.  Inside the work center, LEO BURDEN observed several truck toolboxes that had been opened and the small red trailer that was hooked to the stolen USFS truck was still located inside the compound.  While checking the area for any other damage or missing property, LEO BURDEN observed the ignition to a Polaris Ranger UTV had been drilled out and removed from the dash. There were parts from the ignition and metal shavings on the floor of the UTV.  There were also two unused rubber gloves on the floor.  LEO BURDEN contacted the Garland County Sheriff's Department (GCSD) and Deputy Chandler OVERTON responded to take a report of the stolen property. Deputy OVERTON was provided all the information for the stolen truck and also given serial numbers for the following: one (1) BR 800 CE Stihl leaf blower,

Serial Number: 526573415; one (1) Stihl MS 362 C-M chain saw, Serial Number 188010984; and two (2) Bendix King handheld radios Serial Numbers 1005010118460486 and 1005010118460449. There were numerous pieces of equipment and tools belonging to the USFS located inside the toolbox and stolen truck that were also missing. An estimated value for the missing equipment/tools was determined to be approximately $12,560.00. A USFS owned Polaris Ranger, vehicle #6689, was also damaged by the suspect(s) who removed the ignition from the dash but left it connected to the wires from the unit. LEO BURDEN dusted for fingerprints on the gates and toolboxes but was unable to locate any latent fingerprints. The DVR security camera system installed at the work center office was checked and found to be inoperable. LEO BURDEN contacted the surrounding local, state, and federal law enforcement agencies to advise of the incident and the vehicle was entered into NCIC.

18.     On March 21, 2021, at approximately 1025 hours, LEO BURDEN advised USFS Special Agent (SA) Mia T. PRINCE he received information from GCSD regarding a reported breaking or entering that occurred at 2245 Cedar Creek Rd. ( 34 33' 15" N -92 54' 55" W) off of 10 mile Rd which is within Garland County, Arkansas. The complainant reported that on March 21, 2021 at approximately 0815 hours, he observed a white two door Ford pickup on his property. The complainant stated that a male subject exited the vehicle and took items from the property. A witness arrived on scene while the suspect vehicle was still at the residence. The suspect fled into the woods in the white Ford F150 pickup truck. A ring security camera system installed on the property captured a photograph of the vehicle that matched the stolen USFS pickup truck:



19.     On March 21, 2021, LEO BURDEN received a phone call from the GCSD advising that the USFS pickup truck had possibly been located. LEO BURDEN responded to a wooded area approximately thirty (30) yards off Cedar Creek Rd (34 31'42.9" N -92 57' 8.969" W) near the 600 block, also located within Garland County, Arkansas, where a truck matching the USFS stolen vehicle was located. The vehicle was badly burnt and had no visible VIN number or license plate; however, it was the same make and model as the stolen USFS pickup truck. LEO BURDEN located a brass lock in the bed of the truck that was stamped USFS and could see what was left of two drip torches in the bed of the truck. GCSD had the truck towed by Burks and Mahoney wrecker Service and placed a hold on it. Investigators believed the truck may have been used to commit    other    crimes    in    the    area    including    the    breaking    or    entering.




20.     On March 22, 2021, at approximately 1130 hours, LEO BURDEN was contacted by BOLLAN about a hole in the fence at the Jessieville work center (34 42' 16.34" N -93 3' 45.77"

W).  LEO BURDEN responded to the facility and observed the chain link fence had been cut and a section about five foot wide was pulled open.  LEO BURDEN walked the perimeter of the entire compound checking for any further theft or damage to government property or any other tampering by the suspect(s) occurring within the facility.  LEO BURDEN discovered the ignition of the USFS owned Polaris Ranger vehicle #6689 had been completely cut and removed from the vehicle.  The ignition was lying on the ground beside the vehicle.  This was the same Polaris Ranger that was found to be damaged on March 20, 2021 when the initial investigation was conducted.



21.  On March 22, 2021, SA PRINCE made contact with GCSD Criminal Investigator, Don YOAK, who advised he obtained further information from a citizen who owns property in the Cedar Creek / 10 Mile Rd. vicinity that had game cameras installed throughout the area.  On March 21, 2021 at approximately 0613 hours and 0625 hours, the citizen's game cameras captured a white Ford pickup truck in proximity of where the breaking and entering occurred on March 21, 2021. In the photographs provided, SA PRINCE could clearly identify the vehicle as the missing USFS Forest Service pickup truck by the rear license plate in one photograph and the USFS emblem on the driver's side door that appeared to have been painted over with white paint in an attempt to conceal the decal.




22.     On March 22, 2021, SA PRINCE was contacted by YOAK who advised he had a male individual, Justin TAYLOR (DOB 12/04/1990, identified as a suspect in the breaking or entering incident that occurred off Cedar Creek Rd within Garland County, AR on March 21, 2021. A GPS tracker was previously installed on TAYLOR'S vehicle by GCSD. Information gathered from the tracker showed TAYLOR'S vehicle was parked in the Jessieville High School parking lot on the March 21, 2021 at approximately 7:44 PM to 9:02 PM. This date and timeframe falls within the perimeters of when the second break in at the Jessieville work center occurred during which the Polaris Ranger was damaged. The location of TAYLOR'S vehicle parked in the lot is approximately .14 miles from the USFS Jessieville work center.




23. Based on my training and experience, I know that Android mobile phones are very commonly carried by citizens of Hot Springs, Arkansas, and the surrounding areas.

24. Based on the foregoing, I submit that there is probable cause to search information that is currently in the possession of Google and that relates to the devices that reported being within the Target Location described in Attachment A during the time period described in Attachment A for evidence of the crime(s) under investigation. The information to be searched includes (1) identifiers of each device; (2) the location(s) reported by each device to Google and the associated timestamp; and (3) basic subscriber information for the Google account(s) associated with each device.

25. The proposed warrant sets forth a multi-step process whereby the government will obtain the information described above. Specifically, as described in Attachment B.I:

    a. Using Location History data, Google will identify those devices that it calculated were or could have been (based on the associated margin of error for the estimated latitude/longitude point) within the Target Location described in Attachment A during the time period described in Attachment A. For each device, Google will provide a anonymized identifier, known as a Reverse Location Obfuscation Identifier ("RLOI"), that Google creates and assigns to  device for purposes of responding to this search warrant; Google will also provide each device's location coordinates along with the associated timestamp(s), margin(s) of error for the coordinates (*i.e,.* "maps display radius"), and source(s) from which the location data was derived (*e.g.*, GPS, wi-fi, bluetooth), if available. Google will not, in this step, provide the Google account identifiers (*e.g.,* example@gmail.com) associated

with the devices or basic subscriber information for those accounts to the government.

b. The government will identify to Google the devices appearing on the list produced in step 1 for which it seeks the Google account identifier and basic subscriber information. The government may, at its discretion, identify a subset of the devices.

c. Google will then disclose to the government the Google account identifier associated with the devices identified by the government, along with basic subscriber information for those accounts.

26.     This process furthers efficiency and privacy by allowing for the possibility that the government, upon reviewing contextual information for all devices identified by Google, may be able to determine that one or more devices associated with a Google account (and the associated basic subscriber information) are likely to be of heightened evidentiary value and warrant further investigation before the records of other accounts in use in the area are disclosed to the government.

## CONCLUSION

27.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c).

28.     I further request that the Court direct Google to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

29.     Additionally, the government asserts it will take all necessary steps to protect any

information collected pursuant to the warrant associated with innocent third parties. Such steps may include not causing said information to be further disseminated and only maintaining the seized information relevant to this investigation as identified by the government.

## **REQUEST FOR SEALING**

30.     I further request that the Court order that all papers in support of this application, including the affidavit and warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

/s/ Mia T. Prince (telephonically)
Mia T. Prince
Special Agent
United States Forest Service
Hot Springs Division

Subscribed and sworn to before me on this 29th day of March, 2021

HON. BARRY A. BRYANT
United States Magistrate Judge
Western District of Arkansas

## ATTACHMENT A

### Property To Be Searched

This warrant is directed to Google LLC and applies to:

(1) Location History data, sourced from information including GPS data and information about visible wi-fi points and Bluetooth beacons transmitted from devices to Google, reflecting devices that Google calculated were or could have been (as indicated by margin of error, *i.e.,* "maps display radius") located within the geographical region bounded by the latitudinal and longitudinal coordinates, dates, and times below ("Initial Search Parameters"); and

(2) identifying information for Google Accounts associated with the responsive Location History data.

### INITIAL SEARCH PARAMETERS

**SEARCH PARAMETER 1:  Jessieville Work Center**

- **Date: March 19, 2021**

- **Time Period (including timezone):** 7:20 PM to 11:59 PM CDT

- **Target Location:**  Geographical area identified as:

| Pin | Latitude | Longitude |
|---|---|---|
| North End | 34.705278 | -93.0625 |
| South End | 34.702778 | -93.0625 |
| West End | 34.703056 | -93.063889 |
| East End | 34.703333 | -93.059722 |

- **Time Restriction:** Devices that reported their location as being within the Target Location on the date and during the time period above for a <u>minimum of two (2) minutes</u>.



Figure 1: Google map vicinity of USFS Jessieville Work Center, Jessieville AR

## SEARCH PARAMETER 2: Jessieville Work Center

- **Date:** <u>March 20, 2021</u>

- **Time Period (including timezone):** <u>12:00 AM to 07:30 AM CDT</u>

- **Target Location:** Geographical area identified as:

| Pin | Latitude | Longitude |
|-----------|-----------|-------------|
| North End | 34.705278 | -93.0625 |
| South End | 34.702778 | -93.0625 |
| West End | 34.703056 | -93.063889 |
| East End | 34.703333 | -93.059722 |

- **Time Restriction:** Devices that reported their location as being within the Target Location on the date and during the time period above for a <u>minimum of two (2) minutes</u>.



Figure 2:  Google map vicinity of USFS Jessieville Work Center, Jessieville AR

**SEARCH PARAMETER 3: 2245 Cedar Creek, Garland County**

- **Date:** <u>March 21, 2021</u>

- **Time Period (including timezone):** <u>07:00 AM to 09:00 AM CDT</u>

- **Target Location:**   Geographical area identified as:

    o

| PIN | Latitude | Longitude |
|-----|----------|-----------|
| North End | 34.553056 | -92.917778 |
| South End | 34.552222 | -92.918611 |
| West End | 34.553611 | -92.918611 |
| East End | 34.552778 | -92.917222 |

- **Time Restriction:**   Devices that reported their location as being within the Target Location on the date and during the time period above for a <u>minimum of two (2) minutes.</u>



Figure 3: Google map vicinity of 2245 Cedar Creek Breaking or Entering

## SEARCH PARAMETER 4:  Recovered USFS Stolen Vehicle Location

- **Date:** <u>March 21, 2021</u>

- **Time Period (including timezone):** <u>08:45 AM to 10:15 AM CDT</u>

- **Target Location:**  Geographical area identified as:

    o

    | PIN | Latitude | Longitude |
    | --- | --- | --- |
    | North End | 34.528889 | -92.9525 |
    | South End | 34.528056 | -92.52222 |
    | West End | 34.527778 | -92.952778 |
    | East End | 34.528611 | -92.951389 |

- **Time Restriction:**     Devices that reported their location as being within the Target Location on the date and during the time period above for <u>a minimum of two (2) minutes.</u>



Figure 4: Google map vicinity of Cedar Creek Rd where the USFS Vehicle was located

**SEARCH PARAMETER 5: Jessieville Work Center**

- **Date:** <u>March 21, 2021</u>

- **Time Period (including timezone):** <u>07:30 PM to 09:15 PM CDT</u>

- **Target Location:** Geographical area identified as:

| Pin | Latitude | Longitude |
|-----|----------|-----------|
| North End | 34.705278 | -93.0625 |
| South End | 34.702778 | -93.0625 |
| West End | 34.703056 | -93.063889 |
| East End | 34.703333 | -93.059722 |

  o

- **Time Restriction:** Devices that reported their location as being within the Target Location on the date and during the time period above for <u>a minimum of two (2) minutes.</u>



Figure 5: Google map vicinity USFS Jessieville Work Center, Jessieville, AR

**ATTACHMENT B**

### Particular Items to Be Seized

I.      **Information to be disclosed by Google**

The information described in Attachment A, via the following process:

1.      Google shall query location history data based on the Initial Search Parameters specified in Attachment A.  For each location point recorded within the Initial Search Parameters, and for each location point recorded outside the Initial Search Parameters where the margin of error (*i.e.*, "maps display radius") would permit the device to be located within the Initial Search Parameters, Google shall produce to the government information specifying the corresponding unique device ID, timestamp, location coordinates, display radius, and data source, if available (the "Device List").

2.      The government shall review the Device List and identify to Google the devices about which it seeks to obtain Google account identifier and basic subscriber information.  The government may, at its discretion, identify a subset of the devices.

3.      Google shall disclose to the government identifying information, as defined in 18 U.S.C. § 2703(c)(2), for the Google Accounts associated with each device ID appearing on the Device List about which the government inquires.

## II.   Information to Be Seized

All information described above in Section I that constitutes evidence of violations of Title 18, United States Code, Section 641 - Theft of Government Property (Felony) and Title 18, United States Code, Section 1361 – Depredation of Government Property (Felony) between the dates of March 19 and March 21, 2021, involving unknown person(s).

## <u>CERTIFICATE OF AUTHENTICITY OF DOMESTIC</u><br><u>RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE</u><br><u>902(11) AND 902(13)</u>

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by or an authorized agent of Google, and my title is _____.   I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of Google.   The attached records consist of _____

**[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**.  I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Google, and they were made by Google as a regular practice; and

b.      such records were generated by Google's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Google in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by Google, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____          _____
Date                                               Signature